## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD F. BENOIT, Derivatively on Behalf of MBNA CORP. and on Behalf of Himself and All Others Similarly Situation,<br><br>        Plaintiff,<br><br>vs.<br><br>BRUCE L. HAMMONDS, *et al.*<br><br>        Defendants,<br><br>--and--<br><br>BANK OF AMERICA CORPORATION, a Delaware Corporation, AS SUCCESSOR IN INTEREST TO MBNA CORP., and MBNA CORP., a Maryland Corporation,<br><br>        Nominal Defendants. | Civ. No. 07-CV-561 |

*Additional Caption on Following Page*

## MEMORANDUM OF LAW IN SUPPORT OF THE BENOIT GROUP'S MOTION TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE THEIR DESIGNATION OF LEAD COUNSEL

Pamela S. Tikellis (#2172)
A. Zachary Naylor (#4439)
**CHIMICLES & TIKELLIS LLP**
One Rodney Square
Wilmington, DE 19801
302-656-2500
*Plaintiffs' Liaison Counsel*

Jeffrey P. Fink
Carolyn A. Schnurer
**ROBBINS UMEDA & FINK, LLP**
610 West Ash Street, Suite 1800
San Diego, CA 92101
(619) 525-3990
*Plaintiffs' Proposed Co-Lead Counsel*

Laurence D. Paskowitz
**PASKOWITZ & ASSOCIATES**
60 East 42nd Street, 46th Floor
New York, NY 10165
(212) 685-0969

*Plaintiffs' Proposed Co-Lead Counsel*

Dated: December 10, 2007

LEMON BAY PARTNERS, and MALCOLM    :
ROSENWALD,                          :
                                    :
              Plaintiff,            :
                                    :
    --against--                     :
                                    :
BRUCE L. HAMMONDS, *et al.*         :        Civ. No. 07-CV-562
                                    :
              Defendants,           :
                                    :
    --and--                         :
                                    :
BANK OF AMERICA CORPORATION, AS     :
SUCCESSOR IN INTEREST TO MBNA       :
CORP., and MBNA CORP.,              :
                                    :
              Nominal Defendants.   :
                                   ::

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT........................................................................................................................4

    THE RELATED ACTIONS SHOULD BE CONSOLIDATED.........................................4

    THE BENOIT GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ........................5

        The Procedural Requirements Pursuant to the PSLRA ..........................................5

        The Benoit Group is the "Most Adequate Plaintiff"................................................6

            The Benoit Group Has Made a Motion
            For Appointment as Lead Plaintiff.................................................................6

            The Benoit Group Has the Largest Financial Interest...................................6

            The Benoit Group Otherwise Satisfies Rule 23 ...........................................7

            The Benoit Group Satisfies the Typicality Requirement ..............................8

            The Benoit Group Satisfies the Adequacy Requirement ..............................9

    THE COURT SHOULD APPROVE THE BENOIT
    GROUP'S CHOICE OF COUNSEL.................................................................................9

CONCLUSION....................................................................................................................10

i

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*A.F.I.K. Holding SPRL v. Fass,* 216 F.R.D. 567 (D. N.J. 2003) .....................................................4

*Andrada v. Atherogenics, Inc.,*
    2005 U.S. Dist. LEXIS 6777  (S.D.N.Y. Apr. 19, 2005)......................................................7

*Baker v. MBNA Corp.* 05 CV-272-GMS (D. Del. Oct. 13, 2005) ....................................................4

*Glauser v. EVCI Career Colleges Holding Corp.,*
    236 F.R.D. 184(S.D.N.Y. 2006) ......................................................................................6, 9

*In re Able Laboratories Sec. Litig.,* 425 F. Supp. 2d 562 (D. N.J. 2006) .........................................9

*In re Cendant Corp. Litig.,* 264 F.3d 201(3rd. Cir. 2001) .................................................................6

*In re Cmty Bank of N. Va. Etc. Loan Litig.* 418 F. 3d 277 (3rd Cir. 2005).........................................

*In re Olsten Corp. Sec. Litig,* 3 F. Supp. 2d 286 (E.D.N.Y. 1998)...................................................7

*In re Nice Sys. Sec. Litig.,* 188 F.R.D. 206 (D.N.J. 1999) ................................................................7

*In re Vonage Initial Public Offering Securities Litig.,*
    2007 U.S. Dist. LEXIS 66258  (D. N.J. Sept. 6, 2007) ....................................................4, 6

*In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42 (S.D.N.Y. 1998) ...................................8

*Johnson v. Celotex Corp,* 899 F.2d 1281 (2d Cir. 1990) ...................................................................5

*Jolly Roger Offshore Fund v. BKF Capital Group, Inc.,*
    2007 U.S. Dist. LEXIS 60437 (S.D.N.Y. Aug. 16, 2007) ....................................................9

*Lax v. First Merchants Acceptance Corp.,*
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997).......................................................6

*Mardsen  v. Select Med. Corp.,* 2005 U.S. Dist. LEXIS 714  (E.D. Pa. Jan. 18, 2005) ..............5, 8

*Montoya v. Herley Industries Inc.*,
   2006 U.S. Dist. LEXIS 83343 (E. D. Pa. Nov. 14, 2006)....................................................9

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................................7, 9

*Sczensy Trust v. DiCamillo*, 223 F.R.D. 319 (S.D.N.Y. 2004)........................................................8

*Seaman v. Aid Auto Stores, Inc.* U.S. Dist. LEXIS 1749 (E.D.N.Y. Feb. 15, 2000) ......................5

*Weiss v. Friedman, Billings Ramsey Group, Inc.*,
   2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006)......................................................9

*Werner v. Satterlee, Stephen, Burke & Burke*, 797 F. Supp. 1196 (S.D.N.Y. 1992).......................4

## STATUES AND RULES

15 U.S.C. §§ 78j(b) .............................................................................................................1

15 U.S.C.  78t(a) ................................................................................................................1

15 U.S.C. § 78u-4(a)(3)(A).......................................................................................... passim

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................................... passim

17 C.F.R. § 240.10b-5........................................................................................................1

Federal Rules of Civil Procedure Rule 23 ..................................................................2, 7

Federal Rules of Civil Procedure Rule 42 .....................................................................4

Plaintiffs Donald Benoit, Lemon Bay Partners and Malcolm Rosenwald (collectively, the "Benoit Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Sections 10(b) and 21(D) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, for an order: (i) consolidating the related actions; (ii) appointing the Benoit Group as lead plaintiff of a class of shareholders who exchanged their shares in MBNA Corp. ("MBNA") for shares in Bank America Corp. ("BAC") as a result of a false and misleading proxy statement dated September 19, 2005, (the "Proxy Statement"); and (iii) approving the Benoit Group's selection of Robbins Umeda & Fink, LLP ("RUF") and Paskowitz & Associates as co-lead counsel for the Class.

### PRELIMINARY STATEMENT

These cases involve the events leading up to the merger of MBNA into BAC, which closed on January 1, 2006. The merger was effected by the improper conduct of the MBNA defendants, including the dissemination of a Proxy Statement soliciting shareholder approval in violation of the anti-fraud provisions of the Exchange Act. Plaintiffs also assert derivative claims against the MBNA insiders and its board on behalf of BAC, as successor to MBNA, pursuant to Sections 10(b) and 21(D) of the Exchange Act, and state law class and derivative claims for Defendants' breaches of their fiduciary duty.

Plaintiffs each bring class claims subject to the Private Securities Reform Act (the "PSLRA") on behalf of all persons and entities whose MBNA shares were exchanged for BAC shares effected by the Proxy Statement, which failed to disclose material information and/or was materially misleading. [1] Defendants named in the Proxy Statement claim are liable to plaintiffs and the class for damages, as the Merger price was allegedly artificially deflated, as a result of the proxy fraud.

---

[1] In addition, the Sixth and Seventh Causes of Action in each complaint assert class claims pursuant to state law, claiming that defendants failed to obtain the highest price for the MBNA shares held by the class and failed to take the necessary steps to adequately maximize value for the MBNA shareholders.

On September 18, 2007, the complaints in the instant actions were filed. Pursuant to the PSLRA, this Court should appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the action. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court should determine, among other things, which movant has the "largest financial interest" in the relief sought by the Class and which movant is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Benoit Group has made a *prima facie* showing that it is an adequate class representative. The Benoit Group suffered significant losses, as discussed below. To the best of its knowledge, the Benoit Group's losses represent the largest known financial interest of any Class members seeking to be appointed lead plaintiff. The Benoit Group is not aware of any other class member that has filed an action or an application for appointment as lead plaintiff that has sustained greater losses. In addition, the Benoit Group satisfies each of the requirements of the PSLRA and Rule 23 and, therefore, is qualified for appointment as lead plaintiff in these Actions. Thus, as demonstrated herein, the Benoit Group is the presumptive "most adequate plaintiff" and should be appointed lead plaintiff.

## STATEMENT OF FACTS

MBNA was a public bank holding company which principally issued credit cards. This action arises out of the individual defendants' scheme to protect their positions in the face of imminent securities fraud claims against them. As alleged in the complaints, MBNA's top executives (the "Insider Defendants") were desperate to find a buyer for the Company and defendant Bruce L. Hammonds ("Hammonds"), then MBNA's Chief Executive Officer, had a clear plan. He wanted to find a strategic buyer for the Company which would accede to the following demands: (i) the acquirer would buy MBNA; (ii) the acquirer would accede to the payment of enormous sums to the insider defendants and the vesting of MBNA options in connection with the transaction; (iii) Hammonds would retain an executive position of influence after the merger; (iv) Hammonds' close friends would be offered employment in the new entity; and (v) the liability arising out of the pending securities class action, wherein Hammonds and other MBNA executives were personally

2

named as defendants, would be assumed by the acquirer by the extraction of broad indemnification agreements from the strategic acquirer. In exchange for these essentials, Hammonds was willing to give the acquirer a "show-stopper" in the form of an option to purchase almost 20 percent of MBNA at a price so attractive that no other suitor would consider challenging the acquirer's proposed deal. Hammonds sacrificed the interests of the public shareholders to achieve his own agenda and that of his close colleagues. Unfortunately, the eventual transaction cost the public shareholders *billions* of dollars in lost consideration.

To effect a sale of the Company, Hammonds had MBNA retain Joseph Perella ("Perella") a noted investment banker – agreeing to pay him $40 million in addition to the mammoth fees already being paid to UBS Inc. as MBNA's investment advisor. Perella was retained for one purpose: to find a buyer. After negotiations with MBNA's initial suitor Wachovia Inc. proved to be unsuccessful, Hammonds and the other defendants were desperate for a new buyer. Perella came up with BAC. The actual transaction between MBNA and BAC was negotiated between defendant Hammonds and Kenneth D. Lewis (BAC's President and CEO) over a two hour dinner at an exclusive club in Wilmington, Delaware. The members of the MBNA Board of Directors (hereinafter, the "Director Defendants") approved the deal shortly thereafter, without fully informing themselves of its implications or of potential alternatives.

MBNA's shareholders were induced to approve the merger (which they did by a vote held on November 2, 2005) by means of the materially false and misleading Proxy Statement, which concealed Hammonds' misconduct and other material facts. MBNA's Board, which was controlled by Hammonds, failed to obtain the highest value for MBNA by refusing to shop the Company, and instead leapt into a merger agreement with BAC, which contained a "stock option agreement" (similar to a "poison pill") guaranteed to make a higher bid for MBNA by another bidder prohibitively expensive. Thus, BAC was crowned the winning bidder without the MBNA Board ever having taken any actions designed to perform a market check or maximize shareholder value. The personal benefits accruing to Hammonds from this transaction include tens of millions of dollars of cash "retention" payments over the course of two years, a lucrative new job with BAC, and other

valuable benefits. Although the MBNA board was aware that Hammonds engaged in a self-dealing negotiation with BAC involving an acute conflict of interest, it never appointed a Special Committee of independent directors to negotiate with BAC or considered the merger from a perspective independent of that presented by Hammonds. Instead, the MBNA Board approved this important transaction within approximately one day of learning of its proposed terms.

## ARGUMENT

## THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides for consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(ii) of the Exchange Act addresses the issue of consolidation of similar actions filed under the PSLRA:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21 D(a)(3)(B)(I)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. §78u-4(a)(3)(B)(ii). Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The above captioned actions involve class action claims on behalf of class members who exchanged their MBNA shares for those of BAC pursuant to a materially false Proxy Statement, and claim damages as a result. All actions involve common questions of law and fact and allege the same or similar claims under Federal securities laws on behalf of the same or similar plaintiff class. *Werner v. Satterlee, Stephen, Burke & Burke,* 797 F. Supp. 1196, 1121 (S.D.N.Y. 1992). *In re Vonage Initial Public Offering Securities Litig.*, 2007 U.S. Dist. LEXIS 66258 at *5 (D. N.J. Sept. 6, 2007)(Consolidating like actions under the PSLRA); *Baker v. MBNA Corp.* 05 CV-272-GMS (D. Del. Oct. 13, 2005)(Consolidating like actions pursuant to Federal Rule 42.); *A.F.I.K. Holding SPRL*

4

*v. Fass,* 216 F.R.D. 567, 570 (D. N.J. 2003)(Proper to consolidate actions involving common questions of fact or law.). The state law claims alleged in the complaints are also identical. In addition, both actions will involve similar issues regarding class certification and identical discovery of the parties and of non-parties. Accordingly, in the interest of judicial economy and overall efficiency, these actions should be consolidated for all purposes. *See, Johnson v. Celotex Corp,* 899 F.2d 1281, 1284-85 (2d Cir. 1990).

## THE BENOIT GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff Lemon Bay Partners filed its complaint on September 18, 2007 and published the required notice in the *Investor's Business Daily* on October 9, 2007. [2] (*See* the Declaration of Roy L. Jacobs, sworn to December 10, 2007, Exhibit A, hereinafter, the "Jacobs Decl.") This notice indicated that applications for appointment as lead plaintiff were to be made within 60 days, by December 10, 2007, 15 U.S.C. § 78u-4(a)(3)(A) and, according to the PSLRA, the Court shall appoint the movant that the Court determines to be most capable of adequately representing the interests of class members as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). To determine the "most adequate plaintiff," the Exchange Act provides that the Court:

> shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> > (aa) has either filed the complaint or made a motion in response to a notice . .

---

[2]  Publication in the *Investor's Business Daily* has repeatedly been approved by the courts. *Mardsen v. Select Med. Corp.*, 2005 U.S. Dist. LEXIS 714 at*13-14 (E.D. Pa. Jan. 18, 2005); *Seaman v. Aid Auto Stores, Inc.* U.S. Dist. LEXIS 1749 at *11-12 (E.D.N.Y. Feb. 15, 2000); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *10 (N.D. Ill. Aug. 6, 1997).

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].15 U.S.C. § 78u-4(a)(3)(B)(iii);

*Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

### The Benoit Group is the "Most Adequate Plaintiff"

#### The Benoit Group Has Made a Motion For Appointment as Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, the Benoit Group has timely moved this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members covered by the actions.[3]

#### The Benoit Group Has the Largest Financial Interest

During the relevant period, the Benoit Group exchanged thousands of MBNA shares for BAC shares and received less for the MBNA shares as a result of the false and misleading Proxy Statements. *See* Jacobs Decl., Ex. B. The Group believes itself to have the largest financial interest in these actions. Here, the relative losses of the Benoit Group are directly related to the number of MBNA shares exchanged for BAC shares. The more shares exchanged, the greater the loss. While the loss in typical open market fraud cases is often measured by the reference to market prices, this is not the only test which can be employed. Courts may instead employ flexible tests in making this determination, and often use a four factor test which assesses: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered. *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3rd. Cir. 2001)(finding that identification of the largest financial interest may be difficult as no formula exists to make this assessment; therefore use of these factors is proper); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866

---

[3]    This Circuit specifically permits the appointment of a group as lead plaintiffs. *In re Cendant Corp. Litig.*, 264 F.3d 201, 266-267 (3rd. Cir. 2001)(approving the appointment of a group of unrelated persons but limiting the size of a group to no more than five persons since more could not work effectively together); *In re Vonage Initial Public Offering Litig*, 2007 U.S. Dist. LEXIS 66258 (D. N.J. Sept. 7, 2007)(appointing a group as lead plaintiff.)

at *17 (N.D. Ill. Aug. 6, 1997); *Andrada v. Atherogenics, Inc.*, 2005 U.S. Dist. LEXIS 6777, at *8 (S.D.N.Y. Apr. 19, 2005); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999) (citing *Lax* for this proposition); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (same).

In *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-405 (S.D.N.Y. 2004) the court recognized that methods used to determine a lead plaintiff group's loss may vary significantly, depending on the facts of the case. There, the court employed a test comparing the aggregate number of trades of the lead plaintiff applicants to determine the relative largest financial interest as the most accurate criteria available to determine the largest financial interest. The *Pirelli* court recognized that it could not determine a dollar value loss for the lead plaintiff applicants at the outset of the action since such information was not available, but it was not necessary. Thus, as *Pirelli* makes clear, it is not necessary to arrive at a dollar loss figure and, under some circumstances it may not be possible at the outset of a case to do so, but it *is* necessary to appoint lead plaintiffs. In the instant cases, the number of MBNA shares exchanged for BAC shares is consistent with the four factor test outlined above. Employing the number of shares test, as in *Pirelli*, is an accurate indicator of the relative loss experienced by the Benoit Group and demonstrates that the Benoit Group has a large financial interest in this action.

### The Benoit Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23". Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion

7

to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same). As detailed below, the Benoit Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

## The Benoit Group Satisfies the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists "where the claims of the lead plaintiff arise from the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." *Glauser v. EVIC Career Colleges Holding Corp*, , 236 F.R.D 184, 188-89. (S.D.N.Y. 2006); As the court in *Marsden v. Select Med. Corp*, 2007 U.S. Dist. LEXID 79450 at *10 stated:

> The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement, as both criteria seek to assure that the interests of absentee parties will be fairly and adequately represented by the named plaintiffs. *In re Ikon Office Solutions*, 191 F.R.D. 457, 462 (E.D. Pa. 2000). The typicality requirement, though, "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227. The named representatives' claims are considered "typical" if proof of their claims will necessarily prove all the class members' claims, *Am/Comm Sys., Inc. v. Am. Tel. & Tel. Co.*, 101 F.R.D. 317, 321 (E.D. Pa. 1984), and "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58. Furthermore, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992).

The Benoit Group seeks to represent a class of former MBNA shareholders who exchanged their shares for BAC shares. All such shareholders have identical, non-competing and non-conflicting interests. The Benoit Group satisfies the typicality requirement because it: (1) exchanged

8

MBNA shares for BAC shares; (2) at prices allegedly adversely affected by defendants' conduct, including materially false and misleading statements and/or omissions; and (3) suffered damages. *See Glauser*, 236 F.R.D. at 189 (discussing typicality requirement). Thus, the Benoit Group's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events and are identical.

### The Benoit Group Satisfies the Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." In order to meet the adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 413 (S.D.N.Y. 2004); *accord*: *In re Cmty Bank of N. Va. Etc. Loan Litig.* 418 F. 3d 277, 303 (3rd Cir. 2005). The Benoit Group's interests in this action are perfectly aligned with the interests of absent class members, and RUF and Paskowitz & Associates, their selected lead counsel, cumulatively have decades of experience in effectively prosecuting securities class actions. Accordingly, the Court may be assured that the Benoit Group and their selected counsel will more than adequately protect the interests of absent class members.

### THE COURT SHOULD APPROVE THE BENOIT GROUP'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. *See Montoya v. Herley Industries Inc.*, 2006 U.S. Dist. LEXIS 83343 at *9 (E. D. Pa. Nov. 14, 2006); *In re Able Laboratories Sec. Litig.*, 425 F. Supp. 2d 562, 573 (D. N.J. 2006)(Approving lead plaintiffs' choice of co-lead counsel); *Jolly Roger Offshore Fund v. BKF Capital Group, Inc.,* 2007 U.S. Dist. LEXIS 60437 (S.D.N.Y. Aug. 16, 2007); *Weiss v. Friedman, Billings Ramsey Group, Inc.*, 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24 , 2006). RUF and Paskowitz & Associates have had leading roles in numerous important actions on behalf of defrauded investors, as reflected in their Firm Resumes. *See* Jacobs Decl., Exhibits C

and D. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Because there is nothing to suggest that the Benoit Group or its counsel will not fairly and adequately represent the Class, this Court should appoint the Benoit Group as lead plaintiffs and approve its selection of the RUF and Paskowitz & Associates as co-lead counsel.

**CONCLUSION**

For the foregoing reasons, the Benoit Group respectfully requests that the Court: (A) consolidate the related actions; (B) appoint the Benoit Group as lead plaintiff; and (C) approve the RUF and Paskowitz & Associates as co-lead counsel.

Dated: December 10, 2007                          Respectfully submitted,

CHIMICLES & TIKELLIS LLP

By: _____
Pamela S. Tikellis (#2172)
A. Zachary Naylor (#4439)
One Rodney Square
P. O. Box 1035
Wilmington, DE 19899
Telephone: (302)-656-2500

*Plaintiffs' Liaison Counsel*

Jeffrey P. Fink
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990

Laurence D. Paskowitz
Roy L. Jacobs
PASKOWITZ & ASSOCIATES
60 East 42nd Street, 46th Floor
New York, NY 10165
Telephone: (212) 685-0969

*Plaintiffs' Proposed Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, A. Zachary Naylor, do hereby certify that on this 10th day of December, 2007, I caused copies of the Memorandum of Law in Support of the Benoit Group's Motion to be Appointed Lead Plaintiff and to Approve Designation of Lead Counsel to be served on the following counsel in the manner indicated:

## BY HAND DELIVERY

Richard H. Morse
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Edward P. Welch
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

A. Zachary Naylor (#4439)